UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BARBARA GRAHAM,<br><br>             Plaintiff,<br>    v.<br><br>NEW YORK LIFE INSURANCE COMPANY,<br><br>             Defendant. | CASE NO. 3:25-cv-05483-DGE<br><br>ORDER DENYING MOTION TO DISMISS (DKT. NO. 11) |

## I      INTRODUCTION

This matter comes before the Court on Plaintiff Barbara Graham's motion to dismiss (Dkt. No. 11) New York Life Insurance Co.'s ("New York Life") Interpleader action (Dkt. No. 6 at 8). New York Life is currently in possession of a life insurance policy and seeks equitable relief to determine the beneficiary of the policy. (*Id.*) Plaintiff seeks dismissal claiming an interpleader action is improper because Third Party Interpleader Defendant Constance Graham

"has no colorable claim to the proceeds." (Dkt. No. 11 at 1.) For the reasons stated herein, the Court DENIES Plaintiff's motion to dismiss. (Dkt. No. 11).[1]

## II   BACKGROUND

The relevant facts to this motion are largely undisputed. On or about July 26, 2000, Glenn Lee Graham purchased a $500,000 life insurance policy ("the Policy") from New York Life. (Dkt. Nos. 1 at 2, 6 at 9.) In March 2002, Mr. Graham signed a Change of Beneficiary Request naming his then-wife Constance Graham as the first beneficiary on the Policy and Plaintiff as the second beneficiary. (*Id.*) In November 2007, Mr. Graham and Ms. Graham dissolved their marriage. (*Id.*) In Exhibit A of the divorce decree, Mr. Graham was awarded, among other property, "all the benefits from his own . . . life insurance policies." (Dkt. No. 6–3 at 4.) Mr. Graham died on October 1, 2023. (Dkt. No. 6-4 at 2.)

Both Plaintiff and Ms. Graham made claim for benefits under the Policy. (Dkt Nos. 1 at 3, 6 at 9.) In a letter dated April 12, 2024, Ms. Graham, through counsel, sent New York Life a notice of dispute and demand to halt distribution of life proceed under the Policy. (Dkt. No. 6–5 at 2.) Ms. Graham contended that she believed California was the controlling choice of law for distribution of the funds, and "[e]ven if one were to assume [Washington Revised Code § 11.07.010[2]] is applicable here, this is an oversimplification of the law in Washington as the

---

[1] Plaintiff requested oral argument in their Motion to Dismiss for Failure to State a Claim. (Dkt. No. 11.) However, the Court determines that oral argument would not be helpful to the Court's disposition of the motion and denies Plaintiff's request. *See* LCR 7(b)(4).

[2] Washington Revised Code § 11.07.010(2)(a) states

> If a marriage or state registered domestic partnership is dissolved or invalidated, or a state registered domestic partnership terminated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse or state registered domestic partner, is revoked. A provision affected by this section must be interpreted, and the nonprobate asset affected

same does not apply in all contexts and there are various exemptions." (*Id.* at 3.) Ms. Graham noted that she would "pursue any and all legal rights against [New York Life] should it disregard this dispute and distribute funds to someone other than" herself. (*Id.* at 4.) In a letter dated February 10, 2025, Plaintiff, through counsel, made a demand for payment under the Policy. (Dkt. No. 6–6 at 2.) On April 28, 2025, in an email to Plaintiff's counsel, New York Life stated,

> I also reviewed Washington law and it appears that Constance Graham's divorce from Glenn Lee Graham revokes her interest in the death benefit, and [Ms. Graham's children] are not designated as beneficiaries of the policy. However, the attached Decree of Dissolution mentions an Exhibit A that purportedly lists the assets or properties of Constance and Glenn. In order to ensure that the Decree does not list the insurance policy as an asset or property of Constance or the children, we need a copy of Exhibit A.

(Dkt. No. 6–7 at 4.)

In an attempt to resolve the competing claims to the Policy, Plaintiff, New York Life, and Ms. Graham discussed an agreement regarding the distribution of the Policy's benefits. (Dkt. No. 6 at 10.) On May 12, 2025, New York Life sent a Settlement and Release Agreement to Plaintiff, Ms. Graham, and Ms. Graham's two sons. (*Id.*) Ms. Graham and her two sons signed the proposed settlement agreement, but Plaintiff refused to sign the agreement and release New York Life from liability unless New York Life paid her Washington's statutory prejudgment interest on the Policy. (*Id.*) New York Life refused the new term and stated that Plaintiff could either sign the agreement by June 6, 2025, or New York Life would commence an interpleader action. (Dkt. No. 6–9 at 2.)

---

> passes, as if the former spouse or former state registered domestic partner, failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity or termination of state registered domestic partnership.

1    On June 2, 2025, Plaintiff sued New York Life, alleging breach of contract, Consumer Protection Act violations, bad faith, and Insurance Fair Conduct Act violations for failure to pay her the Policy benefits. (Dkt. No. 1 at 4–6.)

On August 11, 2025, New York Life filed a counterclaim and interpleader action to limit its liability in response to the multiple claims. (Dkt. No. 6.) New York Life claimed it had no interest in the dispute and feared exposure to multiple liability if it distributed the Policy to either Plaintiff or Ms. Graham. (*Id.* at 11.) New York Life requested to deposit the policy proceeds with the Court's registry and be dismissed with prejudice from the action. (*Id.* at 12.)

Plaintiff moves to dismiss New York Life's interpleader action under Rule 12(b)(6), arguing that the action fails to state a colorable claim by Ms. Graham. (Dkt. No. 11.)

### III    JURISDICTION

New York Life filed its counterclaim and interpleader action based on 28 U.S.C. § 1335. (Dkt. No. 6.) Ms. Graham is a citizen of the state of California, while Plaintiff is a citizen of Washington state. (*Id.* at 8.) Additionally, the Policy far exceeds $500, thus satisfying the amount in controversy requirement. Accordingly, the Court finds that it has subject matter jurisdiction over the interpleader action.

### IV    DISCUSSION

**A. Standards of Review**

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). In this case, the Court construes the interpleader

action in favor of New York Life. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citation omitted). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547.

Interpleader is a procedure authorized by 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22 that allows a party holding property to join in a single suit two or more defendant-claimants asserting mutually exclusive claims to the property. *Gains v. Sunray Oil Co.*, 539 F.2d 1136, 1141 (8th Cir. 1976). The main purpose of interpleader is to protect the stakeholder from the expenses of multiple lawsuits and from having to contend with inconsistent or multiple determinations of liability. *Texas v. Florida*, 306 U.S. 398, 406–07 (1939). While rule and statutory interpleader have different requirements for subject matter jurisdiction, venue, process service, invoking either type requires meeting certain criteria. Fed. R. Civ. P. 22(a)(1); 28 USC § 1335; *See also, Libby, McNeill, & Libby v. City Nat. Bank*, 592 F.2d 504, 507 (9th Cir. 1978).

First, multiple adverse claims or potential adverse claims must be made to that same property. *Libby*, 592 F.2d at 507. Additionally, the plaintiff stakeholder must have a reasonable fear of multiple liability. The stakeholder is not required to determine the validity of the competing claims or wait to be sued by one or more of the claimants. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 532–33. However, the stakeholder must have "a good faith belief

that there are or may be colorable competing claims to the stake," based on "a real and reasonable fear." *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012).

An interpleader action proceeds in two stages. In the first stage, a court evaluates whether interpleader is proper based on the facts of the case, including determining whether the stakeholder actually faces or could face multiple adverse claims. *See U.S. v. High Tech. Products, Inc.*, 497 F.3d 637, 642 (6th Cir. 2007) (citing CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1704 (3d ed. 2001)). If interpleader is not properly invoked, the action is dismissed. If (and only if) an interpleader is determined to be proper does a court move to the second stage to determine the merits of the adverse claims. *Id.*

During the first phase, the party seeking interpleader bears the burden of demonstrating she is or may be subject to adverse claims. *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974). Adverse claims or potentially adverse claims exist when at least two defendants lay claim to the property held by the stakeholder. *See General Elec. Credit Corp. v. Grubbs*, 447 F.2d 286, 289 (5th Cir. 1971), *rev'd on other grounds*, 405 U.S. 699 (1972) (holding a plaintiff who failed to demonstrate they have been or may be subject to two or more competing claims has failed to meet interpleader requirements). Sustaining an interpleader based on potential claims requires a "real and reasonable" belief that the interpleaded parties could have a colorable claim to the stake. *Michelman*, 685 F.3d at 893.

The Ninth Circuit has emphasized that the good faith requirement "is not an onerous requirement." *Id.* at 894. The "threshold to establish good faith is necessarily low so as not to conflict with interpleader's pragmatic purpose, which is 'for the stakeholder to protect itself against the problems posed by multiple claimants to a single fund.' " *Id.* (quoting *Mack v.*

*Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010).  A stakeholder "need not sort out the merits of conflicting claims as a prerequisite," but "good faith requires a real and reasonable fear of exposure to double liability or the vexation of conflicting claims." *Id; see also N.Y. Life Ins. Co. v. Welch*, 297 F.2d 787, 790 (D.C.Cir. 1961) ("A stakeholder, acting in good faith, may maintain a suit in interpleader to avoid the vexation and expense of resisting adverse claims, even though he believes only one of them is meritorious.").  Thus, a stakeholder need not show that the purported adverse claimant might eventually prevail but must establish only that an adverse claim meet a "minimal threshold level of substantiality." *Id.* at 894-95.

### B. Analysis

Prior to Plaintiff filing suit against New York Life for not paying her the Policy benefits, Ms. Graham sent a letter to New York Life disputing Plaintiff was the proper beneficiary.  (Dkt. Nos. 1 at 4, 6–5 at 3.)  This dispute remained active immediately prior to the filing of the present litigation.  Thus, at the time of the filing of the interpleader action, New York Life was aware of adverse claims to the Policy proceeds.

Plaintiff argues that Ms. Graham has no colorable claim to the Policy proceeds.  (Dkt. No. 11 at 5.)  In *John Hancock Mutual Life Insurance Co. v. Beardslee*, 216 F.2d 457 (7th Cir. 1954), the Seventh Circuit addressed a situation where the facts did not justify interpleader.  The designated beneficiary of a life insurance policy had changed back and forth several times between the insured's daughter and wife.  *Id.* at 458.  While the wife was the designated beneficiary, the insured and his daughter discussed changing the policy again to designate the daughter as the beneficiary, but the insurer falsely told them that the beneficiary could not be changed.  *Id.* at 458, 460.  After the insured's death, the daughter sent a letter to the insurer in which she expressed her hope that the insurer would be able to help her cover the insured's

medical and burial expenses. *Id.* at 460–61.  She noted that the insurance proceeds would have been just enough to cover those expenses and added that her letter would have been unnecessary if, before her father's death, the insurer had been honest about his ability to change the beneficiary. *Id.*

The Seventh Circuit found that the insurer was unreasonable in filing the interpleader action because the daughter had no actual or potential claim against the policy. *Id.* at 461.  The Court noted that the daughter's communications to the insurer "did not indicate that [she] thought she had any legal right to collect any part of the proceeds on the policy." *Id*. at 460.  The only possible legal claim by the daughter to any money from the insurer would have been a tort action based on the alleged misinformation given to her by the insurer about the possibility of changing the policy. *Id.* at 461.  This potential claim was not a basis for interpleader because it did not suggest the daughter's entitlement to the policy proceeds. *Id.*

Here, unlike in *Beardslee*, Ms. Graham's communications did assert a claim against the Policy based on choice of law and exemptions to the controlling Washington statute, Washington Revised Code § 11.07.010.  (Dkt. No. 6–5 at 3.)  Although it may be, as Plaintiff argues, that Ms. Graham is not entitled to any of the subject proceeds, absent responsive pleading from Ms. Graham, the Court is not prepared to definitively conclude Ms. Graham has no viable claim at this time.

For purposes of the present motion, the only issue is whether New York Life has a "real and reasonable" belief that Ms. Graham could have a colorable claim to the proceeds; a requirement that is not onerous. *Michelman*, 685 F.3d at 893–894.  New York Life need not prove the merits of the conflicting claims, only a "real and reasonable fear of exposure to double liability or the vexation of conflicting claims." *Id*. at 394.  The record indicates Ms. Graham

1  took steps to indicate her intent to litigate. She had her attorney send New York Life a letter
2  demanding that it halt distribution of the Policy proceeds, and stated she will "pursue any and all
3  legal rights against [New York Life] should it disregard this dispute and distribute the funds to
4  someone other than" Ms. Graham. (Dkt. No. 6-5 at 3–4.) Accepting the facts alleged in the
5  interpleader complaint as true for purposes of the present motion, the Court finds New York Life
6  has alleged it reasonably fears there are multiple parties with colorable adverse claims to the
7  Policy.

**V    CONCLUSION**

For the reasons stated herein, the Court DENIES Plaintiff's Motion to Dismiss (Dkt. No. 11.)

As New York Life filed its interpleader action pursuant to 28 U.S.C. § 1335 (Dkt. No. 6 at 8), New York Life is directed to deposit the proceeds of the Policy into the Court's registry no later than October 20, 2025. *See* 28 U.S.C. § 1335(a)(1).

Dated this 10th day of October, 2025.

David G. Estudillo
United States District Judge